Yes, sir. Your Honor, this case on adoption of 2-22-0052, Kimberly Stewart, plaintiff's appellant, Boone County Housing Authority, and Alicia Davis, defendants' attorneys, arguing on behalf of the plaintiff's appellant, Ms. Kira Devin, arguing on behalf of the defendants' attorneys, Mr. Jeffrey R. Hoskins. Thank you. Ms. Devin, on behalf of the appellant, you may proceed. Should I approach the attorney? Yes, you need to. Thank you. Your Honors, we are before the court today because the Boone County Housing Authority incorrectly terminated Kimberly Stewart's housing choice voucher over an allegation that she violated the family obligation to supply information requested for a recertification. The Boone County Housing Authority failed to distinguish between mandatory and discretionary terminations when terminating Ms. Stewart's voucher. So there are clearly two types of terminations outlining the rules. It could be mandatory. It could be discretionary. Correct. I think the other side has initially taken the position it was mandatory. So what rule or provision can you direct us to that tells us that they're clearly wrong, that it cannot be a mandatory termination of the facts of this case? The Housing Authority's policy is the most relevant guiding document here. Their policy is found in their administrative plan, and the relevant section is in C147 to C155 of the record. And the Housing Authority's plan specifically states that reasons for terminations such as Ms. Stewart's are permissive terminations, and the Housing Authority's plan specifically states that they will consider alternatives as described in the later section, and upon consideration of such alternatives and other factors, they may on a case-by-case basis choose not to terminate assistance. Does that apply to mandatory terminations, or is it discretionary terminations? Well, in this case, we're looking at discretionary terminations. That's my question. Why is it discretionary when they're saying it should have been mandatory? I'm not sure why the Housing Authority believes it's mandatory, but the plain language of the Housing Authority's plan makes it clear that these are permissive terminations because they do use language that says the HUD permits the Housing Authority to terminate under a number of other circumstances. So you're not sure why they're taking that position? Well, I believe they're not reading the plan correctly because they have actually went above and beyond the federal regulations in their own plan and made it so that they have to consider factors such as the seriousness of the case and likelihood of favorable conduct in the future in their own plan. Also, in the federal regulations, there is a distinction between mandatory and permissive terminations, and Illinois case law and Gaston and Lipscomb have found that that distinction is very important, and it wouldn't be there if they didn't intend for there to be a difference. How do we conclude that this was not a proper discretionary termination?  How do we conclude that this was not a proper discretionary termination? We can conclude that because the Housing Authority's decision gives no sort of indication that the Housing Authority understood that they had discretion to consider the circumstances in Ms. Stewart's case. The hearing officer's decision simply lays out the information that was presented at the hearing and then jumps immediately to a conclusion that her voucher should be terminated without any sort of rationale. Weren't they exercising discretion in giving the rationale or the reasons for their decision? Couldn't one argue that they exercised discretion, regardless of the fact that they thought that maybe it was mandatory, but doesn't it appear to you as though they did exercise some discretion? It does not appear that they exercised any discretion because the hearing officer indicated in no way, neither in the bystander report nor in the hearing officer's decision, that the hearing officer understood that this was discretionary and that she could consider the circumstances. And as the Housing Authority argues repeatedly in their brief, they believe it is a mandatory termination where they don't have to consider the circumstances because of a misreading of the plain language of their own plan. So they in no way gave any indication when they just recited the facts from the hearing and then jumped to a conclusion without any rationale that they actually considered that Ms. Stewart missed these appointments because she was out of town due to attending a family funeral. She then got stuck out of town because her mother's car was in a car accident and her mother's car was her only mode of transportation. Her personal belongings were stuck in the car, including her house key, mail key, and ID. And this was Ms. Stewart's first year in the program, so she was given no notice before this that January 2017 would be the timing of the recertification appointments. I thought there was a dispute about that, and she said that she had been out of the apartment due to unforeseen circumstances. I think the facts are undisputed that she was out of the apartment because of unforeseen circumstances of attending a family funeral and then being stuck out of town due to a car accident. But the fact that somebody in a normal case doesn't get notice because they're not there wouldn't fall on the Housing Authority, would it? Well, in this case, the Housing Authority gave Ms. Stewart no notification beforehand in the family obligation that this would be the timing of the recertification or that... And how would they give that notice? Well, when she initially signed the statement of family obligations, the Housing Authority should have included a clear indication that this would be the timing of her recertification. So in CFR 982551, I believe it lays out the family obligations and says that the Housing Authority has to give notice of these beforehand. So the only family obligation that they're... They do give notice of the date to come in for the recertification. Where's your authority to say that they have to say, for your case, it's going to regularly be in January or June or August? Well, the regulation states that they have to give notice of family obligations, and the obligation at issue is supplying information requested for recertification. The family obligation at issue is not missing two recertification appointments. That language actually comes from the Housing Authority's plan, which is not provided to participants, and there's no indication... Wait a minute. Your point is that she was terminated because she didn't give the information, and you're finding fault with the notices? Well, she's actually not... The Housing Authority is terminating her because she missed two appointments. She was willing to provide the information, which she indicated on February 8th when she contacted the Housing Authority, only one week after the second missed appointment, and explained her circumstances and said that she was sorry for missing the appointment and left her phone number. And at that time, the Housing Authority could have asked her for the recertification paperwork, and she would have been happy to provide it. But she would have, but they were under no obligation to do that. Well, based on their plan, they should have considered the circumstances of her case, what they required to consider the circumstances of her case, and... If it's a discretionary termination, correct? Yeah. Well, it is a discretionary termination, so... All right. I think you were raising a legitimate point earlier. Is part of your argument that the hearing officer didn't appear to know or even appreciate that the termination was not mandatory? Is that part of what you're saying, that she assumed it was or went on that theory? Correct. As stated in Gaston and Lipscomb, when a hearing officer simply recites the facts from a case and then jumps to a conclusion, that doesn't indicate that they have considered the circumstances or considered that it's a discretionary termination. So what's missing in this case? This is a close issue on that. I assume you're not saying you have to have some long-winded, detailed rationale given. So why did the decision here fall short on that issue of not giving a sufficient explanation? Well, the hearing officer at the hearing didn't in any way indicate that she understood this was discretionary, because she could consider the circumstances. Does the code require that you give reasons? The interpretation of the code under Gaston and Lipscomb does require that you give reasons. And the preamble to the regulations that is cited by the housing authority in their brief actually does require that there is a rationale for the decision. And so the laying out the facts of the case, i.e., she wasn't there, she never came, she didn't, those aren't reasons? Can you repeat the question? What they laid out in their decision about, you know, she wasn't there, she didn't come back, she didn't do what she was supposed to do, those aren't reasons? They just listed the facts, but they didn't actually have a rationale or explanation. All the hearing officer did was list what was stated at the hearing. Okay, so that's not sufficient to say those are reasons why they terminate her. Right, and in Gaston and Lipscomb, the court found in a similar circumstance where there was a violation of family obligations, that if the hearing officer fails to consider the circumstances, then it's rendering the section on consideration of circumstances in the federal regulation meaningless. And here, the housing authority is doing the same thing. They're considering this a mandatory termination, and they're failing to provide any indication that they understand it's a discretionary termination based on their own plan. And their plan actually, since it goes above and beyond the federal regulations, really is something that could guide the court. So your point is they didn't give reasons explaining how they considered the factors in deciding whether to terminate or not terminate. Yes. They clearly laid out reasons why she would be subject to at least a discretionary termination. Well, the hearing officer didn't lay out any analysis. She just laid out the facts, and she didn't actually relate them to the alleged violation of the family obligation. She just laid out what happened. Basically, she missed two appointments, and so the housing authority is considering that strict liability for losing your voucher. But that's not how their own plan and the regulations are written. Well, if it's strict liability, then your point is the hearing officer did not lay out an analysis of the factors to be considered in deciding whether or not to terminate on a discretionary basis. Correct. She had no analysis, no rationale at all. But can we infer from her inclusion of the resuscitation of the facts that she was making a decision based on her own discretion? I don't think that we can infer that from her facts, particularly where there's no indication. There's nothing for the court to review there about her rationale. There's just a fair recitation of facts. And Illinois courts have found that that's not okay. In Tolliver, the court found that it's an abuse of discretion, arbitrary and capricious, when an administrative agency imposes an overly harsh punishment in light of mitigating circumstances. And here, the housing authority is doing that. They're taking these two missed appointments that she didn't know she had to attend beforehand. She didn't actually get the notices because she was out of town due to this funeral and car accident. And they're using that as strict liability to say, if you miss two appointments, your voucher is terminated and we won't consider the circumstances. But their plan says specifically the languages they will consider the circumstances. And they're just reading that out of their plan. And so based on their plan alone, the court could find that the housing authority failed to distinguish between mandatory and discretionary terminations, failed to consider the circumstances of Ms. Stewart's case. Also based on the regulations, the court could decide, based on the interpretation in Gaston and Lipscomb, that the housing authority also failed to distinguish between mandatory and discretionary. The plan in Lipscomb actually mirrors the housing authority's plan here so closely that the same chapter numbers are used. In Lipscomb, the court decided that, based on the regulations in the housing authority's plan, that they had to consider the circumstances for a violation of a family obligation just like this, where there was an alleged failure to provide information and correct information for a recertification. So based on those two factors alone, the court should reverse the housing authority's decision to terminate Ms. Stewart's voucher and reinstate her benefits in full. In addition, this decision is arbitrary and capricious, where the housing authority failed to consider the mitigating circumstances. As I stated briefly, it's similar to the Tallenberg case, where in Tallenberg, the voucher participant unintentionally misreported income. It was actually a large sum of money in that case that that person owed, and the housing authority offered a down payment that was really large and most of the tenant's income. And that court found that where the tenant could afford the repayment plan, it was overly harsh in view of mitigating circumstances. And if it's overly harsh in the use of discretion, the court can reverse the decision. And so here, based on the arbitrary and capricious standard, we would also ask that the court reverse the termination of Ms. Stewart's benefits and reinstate her housing choice voucher benefits in full. All right. Thank you, Ms. Stone. Thank you. Mr. Hoskins, on behalf of the opponent. Thank you, Your Honor. Good morning, Your Honors. Good morning. Good morning, Presiding Judge, and may it please the Court. My name is Jeff Hoskins. I represent the Boone County Housing Authority, as well as Felicia Davis in her capacity as the hearing officer for the housing authority. I'm not going to reiterate the facts, as I believe that those have been sufficiently set forth in the briefs this morning. I would like to point out, though, to Your Honor that there are three main sections of the Code of Federal Regulations that apply here. As the Boone County Housing Authority is a public housing authority, and it is tasked with administering the housing choice voucher program, of which Ms. Stewart is a member. The first one of those is 24 CFR 982.551, which sets forth the annual recertification requirements. The other one is 24 CFR 982.552, which sets forth the policies that public housing authorities are required to take if the annual recertifications or family obligations have not been complied with. Coupled with all of that is 24 CFR 54A, which requires all public housing authorities to implement an internal administrative plan, which is the mechanism that the housing authorities use to implement the policies of the Code. So you have all these provisions that obviously need to comply. Correct. My threshold question is, are you still all in on the mandatory termination period? It can be looked at like this, Your Honor. Under section 982.551B, it sets forth that the public housing authority may use its discretion and implement a plan dealing with the listed violations of the Code. One of those is the family obligations. And then pursuant to 982.54A, the public housing authority, the county housing authority here, implemented its administrative plan, which says, and it used its discretion in this case, and it said we will terminate if these family obligations are not complied with, one of which is the annual recertification. So does that make it, in your opinion, a mandatory termination? I think that's the first analysis that the housing authority can look to, yes, Judge. Well, they can, but what about if we don't disagree, if we don't agree it was mandatory? Even if it's not mandatory, the housing authority then, under section 982.552C, is given discretion to consider other factors. And in this case, the housing authority clearly considered other factors. It set forth the fact that Ms. Stewart was out of town at a family funeral and that her mother's vehicle was her mode of transportation, that her mother was in a car accident. On top of all of that, the hearing officer admitted into evidence three separate documents, the obituary of Ms. Stewart's aunt, the traffic crash report, as well as the tolling receipt for the city of Elgin. So you're saying that by inciting the facts, that was evidence of using discretion? That was evidence of using discretion, Your Honor. Yes, it was. And in distinguishing counsel's cases, particularly the Limpson case and the Gaston case, this is a case that was cited in the brief as a distinguishing factor on a due process argument, which counsel cited as the Carter case. The Bowman case actually says that the listing of those factors is an indication that those matters were considered by the hearing officer. Well, I don't know if Gaston and Lipson actually say that. What they are talking about, they stand for the proposition. It's not sufficient for the hearing officer to simply summarize the evidence. That's not providing specific reasons why they chose a discretionary termination. Thank you, Your Honor. If you look at the case, sure, the hearing officer can say, you know, this was the evidence, this was the evidence, this was the evidence, but I'm using my authority to have a discretionary termination for the following reasons. That's what it requires. That's not in here, is it? It is in here, Judge. And I would also say two things with that. One was the Lipson and Gaston cases. There were no individual documents that were submitted to the hearing officer that were personal to the reason why the termination was implemented. In other words, in Lipson, the issue was did the tenant comply with income certification and income requirements to disclose what the income is. The only documents that were submitted to the hearing officer were HUD-formed documents that says this is what the tenant's income is. There's no document that says this is why the tenant didn't submit the income. The difference is in this particular case, there's documents submitted that show, beyond just the fact that Ms. Stewart didn't show up, there's documents that were submitted to show why she didn't show up. Doesn't that all go to whether or not she would even qualify for a discretionary termination as opposed to whether or not we should exercise our discretion in either terminating or not terminating? Isn't this somewhat of a two-part process? There's two ways to look at that. It could be a two-part process. The housing authority could rely upon Chapter 12 that says we will terminate in this case. It could, but what's your fallback? The fallback is even if it's discretionary, those discretions are in place. If you were to deem those two provisions within Section 12 to be in conflict, the more specific one, and so the way the canon would say under statutory construction is to look at the more specific one. The more specific one says when the family obligations have not been complied with, we will terminate in that situation. And so if they're deemed to be in conflict, you can look at the more specific one. But if you put that in your policy, haven't you negated your obligation to exercise discretion and consider all the factors set forth in the statute? I don't think that you have because the hearing officer still has the ability to... Not ability, obligation to exercise discretion. There is no obligation to do so, but this hearing officer went above and beyond and did so. And the record is clear. Just so I'm clear, your position is in a discretionary termination there is no obligation to consider the factors? No, in a discretionary termination there would be an obligation to consider the factors. Let's assume for the sake of argument here that this was discretionary. Where in the order can I point to and say that reflects an exercise of discretion? Within the hearing decision... Can you point us to... I was going to ask the same question. Point us to which paragraph you guys are... shows an exercise of discretion that goes beyond merely listing the evidence. This is a very good job by the hearing officer of listing the specific evidence that was presented. But where does it say, for the following reasons, I choose this option? Where does it say anything like that? Sure, and this is assuming that there's a requirement for a discretion. Right. And it's further assuming that the hearing decision itself must set for specific reasons with specificity, which HUD has actually said they're not required to do so. Proceed on that assumption for the purpose of the hearing. That's fine, Judge. In the very introduction it says it discusses an informal hearing that occurred. It sets the provisions of how the hearing is to be provided under 982.551. It sets forth the procedural history as to what happened. It set forth the hearing issues. That has nothing to do with exercise of discretion, setting forth the procedural history and deciding evidence. That wasn't my question. It also says, Your Honor, that the hearing officer has considered the entire record in this case. Yes. And the hearing officer has made certain findings of fact. In order to make those findings of fact, the hearing officer would have had to consider those situations. But maybe we're missing something. Is there something in there that says I choose determination in order because of the following reasons, considering all of the factors you just listed? Is there anything in there that specifically says that? Your Honor, I think it's within the individual listings themselves. You're saying you can infer that the court, you know, that she exercised her discretion by indicating she. And I think the personal nature of those, distinguishing again from the Liston case, or the Lipton case, the personal nature of those is the exercise of discretion because they are personal. But you would acknowledge in response to her question, the position is you can infer that from the listing of the factors, but there's nothing in there you would agree that specifically makes those specific reasons stated. Respectfully, Your Honor, I would disagree with that. Well, nowhere in there does she say, you know, based upon my review of the records, I find blah, blah, blah, blah, blah, blah, blah, blah. It is my, you know, decision that, you know, blah, blah, lays out the. Nowhere does it say that, but you're saying to infer it from her laying out. You can certainly infer it and also. That was my question. You can infer it, but it's not specifically stated. Is it or isn't it? Because if it is, show us where it is. The wording is not there, Judge. Thank you. However, I will state again that HUD has specifically stated within their regulation that that's not required. As a matter of fact. Can you tell me where that is? I can, Judge. Okay. That was cited in both parties' briefs as to 49 Federal Regulation 12215. What HUD actually said was beyond the requirement is that the hearing officer must state briefly the factual or other basis for the decision. HUD actually said that's too much. For the basis for the decision? HUD says, HUD said state that the proposed rule of stating briefly the factual or other basis for the decision is too much. What the rule now requires is that there must be simply a statement of fact or law upon which the decision is based. And in this case, there are numerous facts upon which the decision is based. And those are laid out under the findings of fact. That complies with 92.555, which is what the hearing decision must contain. And furthermore, plaintiff at this point has now filed a writ of certiorari with the trial court and has now filed two briefs with both the trial court as well as with this court. Certainly, plaintiff understands the facts upon which her termination was based. We're here in front of Your Honor's argument. But that's not the point. The point is whether or not the hearing officer, at the time that the order is entered, exercises discretion, not what we know many, many, almost two years later. The hearing officer, assuming the administrative plan controls and the administrative plan says that we will terminate for noncompliance with the family obligations, there is no requirement for discretion other than what has been done in this case, which is setting forth the facts upon which the decision is based. The other thing that I would like to point out to Your Honor as well is the standard of review under which this case is to be considered. Under the clearly erroneous standard, the decision of the housing authority is not to be overturned unless there's a definite and affirmative conviction that a mistake has been committed. So it's a pretty high hurdle, right? It's a very high hurdle. And going to plaintiff's arbitrary and capricious standard, under the Greer case, even with the arbitrary and capricious standard, it also, in and of itself, is a very narrow standard. And it says that the underlying decision is not to be overturned unless there is a clear error of judgment. Isn't this a mixed question, though? I mean, the factual findings, don't we review those under a different standard than clearly erroneous? The factual findings themselves can be reviewed under a manifest waste. And that's an even higher standard. So the fact findings are even higher, and then the mixed findings are the clearly erroneous. Again, very high. And even under an arbitrary and capricious standard, the underlying judgment should not be overturned unless there is a clear error of judgment. And there has not been a clear error of judgment in this case. Don't we also look to whether or not the law that was applied, the rule of law that was applied, was violated or followed incorrectly? I.e., in this case, mandatory versus discretionary when the commission felt that it was mandatory? If that's the argument of the judge. If that's the argument of the judge, again, I think that would fall back on the clearly erroneous standard as to a mixed question of law and fact. Again, a very high hurdle that must be met. The other difference here as well with the Lipsicum case and the Gaston case is the fact that plaintiff in this case had an opportunity to contact the housing authority. The plaintiff was gone for a period in excess of 30 days. There was a statement of obligations that was signed by the plaintiff that said. Wasn't that also implicitly in that requirement that you, when you leave, you anticipate being gone for 30 days? I think in this case, Judge, given the facts that the hearing officer set forth, the fact that. Go ahead. May I finish? Of course. Thank you, Judge. The fact that there was an accident, the fact that plaintiff claims that she was unable to get her wallet or any of her belongings out of her car, I think the plaintiff in that case could have easily picked up the phone and called the housing authority and said, Hey, I'm down here in Elgin. I've got this stuff going on. I don't know how long I'm going to be gone for. I know that I've got to call you and let you know that I'm going to be out of the house for in excess of 30 days. I think that that could have easily happened. She didn't have the phone number. Pardon me? She didn't have the phone number. She could easily look up the phone. The Boone County Housing Authority is a public housing authority listed. Very good. All right. Thank you very much, Mr. Hopkins. Thank you, Your Honor. All right, Ms. Devon, you may address the court in rebuttal. Thank you. As the housing authority stated, they take their word will in their plan to mean that they have to do something, meaning they will terminate, but also they have the will to mean they will consider the circumstances. That's repeated multiple times throughout their plan. On C-155 in their administrative plan, the housing authority states they will consider the following factors when making its decision to terminate assistance, including the seriousness of the case, especially with respect to how it would affect other residents, billing for time since the violation occurred, the family's recent history, and likelihood of favorable conduct in the future. Here, the effect on other residents is nonexistent. In terms of the seriousness of the case, this was Ms. Stewart's first year in the program, first time, missing appointments that she had no idea would happen. She didn't receive the notices, so she couldn't actually go to the appointments. She indicated in her February 8th letter that she was sorry she missed the appointment, explained her circumstances, and left her phone number for the housing authority, which was tantamount to requesting another recertification. Let me ask you a question. If you have a car payment due and you had a funeral you had to attend, you were out of town, and you just didn't get around to it, if you think if you call the bank and say, hey, I had a family obligation, I didn't make it, they would say that's okay? Well, this is different than a car payment because a car payment is something that's regularly scheduled, likely monthly. Here, this is an annual recertification appointment that is set four months in advance that Ms. Stewart didn't know would be set four months in advance, and the housing authority acknowledges that they have a full four months that they can do this recertification in. And so if the housing authority would have accepted Ms. Stewart's recertification after February 8th, they would have still had a full three months to recertify her. So it's different than a car payment, which is a monthly fee that you might be building interest on. Well, it's no different than not getting your mail. I didn't get my mail. I couldn't get into my place. And do you think anybody else would buy those excuses? Well, I think here a housing choice voucher is a protected property interest, so it rises to a different level than making a car payment, and that's the reason there are mandatory and discretionary terminations, and that's why the housing authority's own plan requires that they consider the circumstances of the case because they're acknowledging that every termination or every reason that could lead to a termination doesn't have to lead to a termination. Counsel, let me ask you this. We spent considerable time asking your opposing counsel where in the hearing officer's order were reasons stated, and his overarching response is, well, they can be inferred from the order. So how do you respond to his argument that the necessary or required reasons can be inferred from the order? There is no way for the court to review whether or not there's an inference here because there's no indication in the record that the hearing officer understood she had discretion and could consider the circumstances. And in the case that the housing authority cites too in Bowman, the court there indicates that a hearing officer should at least be aware of their discretion. So in Bowman it says that where the hearing officer indicates they were aware of their discretion to consider those factors, that could be enough, and in that case the hearing officer indicated at the hearing that they were going to take everything into consideration. Even though the housing authority alleges that there is some sort of statement in the hearing decision like that, there is no statement in the hearing decision or the bystander report where the hearing officer says, I understand I'll consider all these circumstances. How do we get past this, as he pointed out, the clearly erroneous standard of review? Well, for the question of law, as you pointed out, the issue of interpretation of the housing authority's plans and regulations, that would be a de novo review. And then the question of the application to this fact scenario would be the clearly erroneous standard of review. It's a high standard. Yeah. In this case, the housing authority's decision was clearly erroneous because they completely read out their own language in their plan. They found to follow their plan, they didn't consider the circumstances of Ms. Stewart's case, and if they would have considered the circumstances of this case, they would have found that in view of the mitigating circumstances, Ms. Stewart losing her voucher for missing two appointments that she didn't know about because of attending a funeral and being a car incident was overly harsh and abuse of discretion. The housing authority cited to the preamble, but misstated the language there. Your time is up. You can finish your thought or summarize if you'd like. I don't know if you heard the bell go off. Oh, sorry. I didn't hear it. Would you like to summarize? Yes. Just the preamble language states that the housing authority actually does have to provide a rationale and a varied conclusory statement of the hearing decision that doesn't let the participant know the basic reasons for the decision, doesn't satisfy regulatory requirements. So we ask that the court reverse Ms. Stewart's voucher termination and reinstate her voucher benefits in full. Any further? I have none. Thank you, Ms. Stone. Thank you. I'd like to thank both sides for the quality of your arguments here this morning. The matter will, of course, be taken under advisement. A written decision on this matter will issue in due course.